Good morning, Your Honors. May it please the Court, my name is Christopher Ho, and I'm here for the plaintiff's appellants, Martha and Vera, et al. On behalf of my clients, I'd like to thank the panel for scheduling this special sitting today. Before I begin, I'd like to call the Court's attention to a typo in our 28J letter. In the third paragraph, the word considered ought to be conducted. I apologize for that. And finally, I'd like to reserve three minutes of my time for rebuttal, if I may. Your Honors, this appeal arises from a jury trial in Fresno of the claims of 23 immigrant workers who were faced with national origin discrimination in the workplace. But at that trial, they were confronted by the same wrong that they were in court to seek redress for. The facts of this case show that jury selection was permeated with racial bias, which went uncorrected. As a result, three individuals who were in all respects qualified to sit on the jury were struck by NIBCO because they were Hispanic. Because the integrity of our legal system is called into question whenever it's tainted by racial bias, and because of the seriousness of the equal protection interests at stake, this Court has an affirmative duty under Batson now to analyze the record itself, vacate the judgment, and remand for a new trial. As we've pointed out, the district court clearly erred when it adopted and relied upon NIBCO's mischaracterized, misstatements, excuse me, about the jurors that it struck, and also when it failed to see that NIBCO had a disparate pattern of questioning. Of course, some of the reasons were accurate, right? No, Your Honor. You're saying they're all inaccurate. They are either totally inaccurate or they are very gross embellishments of the underlying facts, Your Honor. On all three jurors? Yes, Your Honor. With Juror Garcia, she had said that her mother had been in a workplace where she felt that she had been racially discriminated against. In the hands of NIBCO's counsel, that became, oh, her mother was involved in a discrimination lawsuit. With Juror Gomez, she said that her sister had been fired because she had called him sick too many times and said it was my sister's own fault. Again, in the hands of NIBCO's counsel, that became she was involved in a discrimination suit or she was involved in a discrimination matter. And with Juror Lucatero, he had only said that his father had been laid off. And in the hands of NIBCO's counsel, that became that his father had been recently laid off. The only difference is recently is distinct from laid off? That's one word difference? Or is there something more? That is one word of difference, but I think I would submit it's an important difference because Was there any other, as Judge Silo was saying, is that the only difference or are you saying there's more difference? With Mr. Lucatero? Yes. Well, there's the other thing about Mr. Lucatero, which is that NIBCO's counsel represented to the district judge that Mr. Lucatero lived with his father and that he was very close to his father. In fact, the jury questionnaire does not have any such information, nor did Mr. Lucatero say anything to that effect on voir dire. So those things are basically made up as well. With respect to two of the jurors, Garcia, who I think was prospective juror 17, and Adrian Lucatero, did counsel for the class rebut the description that the attorney for NIBCO gave of the reasons, the non-discriminatory reasons for striking the jurors? We did, Your Honor. We didn't deduce all the reasons that we put in our briefing. We did point out that there were issues as to a consistent pattern of strikes made by NIBCO, three strikes of lefty notes. We said that there was a racial issue. We made a debatable objection and then we went to sidebar and then we discussed with the court what the jurors had actually said as opposed to what NIBCO claimed they said. Is it your position that a trial court in this circumstance, a district court, has an independent duty to examine the record and determine whether the basis for the explanation for the strike, in fact, is accurate and correct and does not smack a pretext? That is our contention, Your Honor, and that's fully consistent with what Batson talks about, which is the court having an affirmative duty at Step 3 to actively probe for the possibility of discrimination. Most of the cases that talk about that independent duty or that speak to it are criminal cases, are they not? I believe so, but I don't know that there is any distinction that's relevant to this case for civil versus criminal cases. Some of our sister circuits have addressed that issue and concluded that it should not or does not apply in the civil context. Isn't that correct? That may be, Your Honor. I don't see that in this circuit the decisions have come down any differently in civil cases as to that duty as to criminal. As far as I can tell, we've been silent on it, but I think the Fifth and perhaps the Seventh Circuit have said that it only applies, they've declined to extend that independent duty of examination to civil cases. Well, Your Honor, in light of the fact that the equal protection interests under Batson are of such paramount importance, I don't see, I would respectfully disagree with those circuits and say that the harm to the courts and to society of striking people because of their race is just as serious in the civil context as it is to the criminal context. So counsel in this situation, part of your argument is that counsel's trying to, for NBCO trying to sustain the strikes, made some inaccurate statements. Counsel asserting the Batson challenge has no duty whatsoever to alert the district court to problems with the strikes? Well, let me back up one second, Your Honor. I think our case is not simply that NBCO made misrepresentations of fact. It's also that they employed a disparate pattern of questioning in strikes. But having said that, Your Honor, it's no doubt that nobody did a great job at the Batson sidebar, and the plaintiffs should have done a better job of calling the comparative What's your best civil case from the Ninth Circuit that says it's the same standard for a court to go back and look through the questionnaires and have a transcript of the voir dire and all this? I can't name a case offhand, Your Honor. My sense is that most Batson cases are criminal cases, and I can't think of one as I stand here where a civil case in a Batson context has actually said that. I'm happy to research it and submit further briefing, Your Honor. Well, I assume you would have probably cited it if it was out there. I'm not aware of such a case as I stand here, Your Honor. As we've pointed out, the district court clearly erred when it adopted NBCO's misstatements and also when it failed to see NBCO's disparate pattern of questioning for Latino versus non-Latino members of the veneer. But compounding those clear errors was its mistake of law in not conducting this third step of the Batson analysis, but instead ending its inquiry as soon as NBCO had offered up facially neutral reasons for its strides at step two. But as this Court said in Lewis, the third step is the real meat of the Batson challenge. And so under decisions of this Court, such as Alanis, Paulino, Yee, and most recently in a 2009 case, Gonzalez versus Brown, this Court must always proceed to step three. And as the circuit noted in Green, where the Court doesn't discharge its independent duty to safeguard against discrimination, its conclusions are not entitled to a presumption of correctness. You don't think the district court went to step three at all here? No, Your Honor. My read of the record is that basically NBCO's counsel offered a number of facial neutral reasons. NBCO, and didn't go beyond that, didn't scratch the surface to see if those reasons were either substantiated by the record of the voir dire and jury questionnaires or didn't perceive that the judge asked different types of follow-up questions depending upon the ethnicity of the jurors. Well, the hire moves pretty quickly, doesn't it, in the ordinary circumstance? Yes, it does. I mean, I sat down and compared what counsel said for their reasons, and I'll be asking some questions about that to your opponent. But to line everything up, it took me a couple of hours to look at the things in the appendix, in the juror questionnaires, to go back and compare what was said with what was in the transcript. You would hold a district court to that determination, to make that effort, wouldn't you? I believe the case has imposed such an obligation, Your Honor. When it comes to matters involving equal protection, I think that getting it right is better than doing it fast. And there's actually a recent second-circuit case that disapproves of court proceedings that are so fast that they don't allow for proper Batson analysis. And I believe I can get that cite for you. It's in your brief, isn't it? I believe so. It's called – I'm forgetting it right at the moment. When you sit down before you come back up for rebuttal, you can check your brief. If it's in there, we've taken it into consideration. Okay. Okay, Your Honor. Again, I'd just like to return to the argument that because NBCO basically didn't do step three and didn't apply comparative juror analysis, which is required, these errors of law call for a de novo review. What's clear is that comparative juror analysis was particularly called for in this case, where counsel promptly objected, alerted the court to the racial pattern of strikes, and raised questions at sidebar about the jurors and what they actually said. NBCO, in its briefing, can point to only four statements of the district judge that said – that it says proved the judge actually did employ comparative jury analysis, but in fact, three of those were the judges were finding and bolstering NBCO's arguments, and the fourth was the judge asking a question of NBCO's counsel that NBCO's counsel never answered. I'm running out of time, Your Honor. Let me just – As I understand your position, you would say that the law is that once your side told the judge that there's a prima facie case here because you're striking off all these Hispanics, then the opposite side is supposed to go forward and give the reasons. You don't have to do anything else. You don't have to say, Judge, that's not what the record says, or Judge, look at the bar deal, or Judge, look at these questionnaires. You don't have to do anything, but you can rest your laurels on that and catch it on appeal, right? Well, no, Your Honor. I don't say that this Court should enunciate a rule that this counsel just has to sit back and do nothing. We were – we could have done a lot better job, and we should have done a better job. I will be the first to admit that. Everybody – But you didn't point out in the record where it's – that's not true or anything like that? I believe we verbally argued that some of this – some of the NBCO's counsel's representations were inaccurate, but we didn't – You didn't say where. Okay. We didn't point a page in line, Your Honor. Well, you did say that the – it seems to me, as Judge Hawkins points out, you don't have a lot of time, either. You – this is a fast-moving process, and you did, with respect to each of these people, point out conflicts in what counsel said and what the facts were, didn't you? We did. I'd like to reserve the balance of my time. Good morning, Your Honors. May it please the Court. Charles Stevens. Appellant's position ignores, as some of his recent responses suggest, the settled rule that there is a burden of rebuttal on the party in Appellant's position. Even after Miller L.? Yes, sir. Absolutely. And Miller L.? There was substantial evidence in the record that the party in Appellant's position had seriously contested the race-neutral explanations offered by the prosecutor. Indeed, there were days of litigation over the good faith of those proffered neutral explanations. They had evidence about the practices of the DA's office. They had a former DA come in, who was then a sitting judge, and testify about the case. There was substantial evidence that was put forth to rebut the race-neutral evaluations. But this is not an unsettled question in this circuit. The circuit has addressed this several times. Most recently, in the Collins case, cited in reply by Appellant, the Court said flatly, after the neutral evaluations are given, quote, the ultimate burden returns to the moving party at step three, and the moving party must persuade the district court that the striking party's non-discriminatory reasons were pretextual. And that followed a long line of unbroken cases. The Boyd case, and we've discussed all these cases in our briefs, Your Honor. Didn't the lawyer in the Boyd case, after the neutral explanation, basically accept it? The lawyer continued to argue impact on the jury, disparate impact on the jury. He did not accept the reason. And, in fact, because the lawyer did not go on to argue pretext, i.e., to rebut the race-neutral evaluations, this Court moved that it was not a valid Batson challenge. In fact, the Court again said, quote, a moving cannot satisfy his ultimate burden if he does not offer any evidence to rebut the prosecutor's race-neutral explanation. It goes on to say, quote, Boyd did not explain to the trial court why it should disbelieve the prosecutor's race-neutral explanations. Accordingly, it rejected the appeal. Now, the lawyer at trial representing the competitive class, the Rivera class, did make some statements with respect to Teresa Gomez, prospective juror number 6, didn't he? Let me adjust that, Your Honor. Why don't you start with a yes or no. Did he say anything in response to the facially-neutral explanation given by NBCO counsel? Yes. Okay. There were four reasons proffered by NBCO's counsel as race-neutral reasons for juror Gomez. Let's go through them. He said that her sister had been fired, right? Right. Her sister had not been fired. Her sister had been fired, but she said it was her fault. She deserved to be fired, right? That was the explanation for the sister's termination. She said, yes, she confirmed she had been fired, but offered that she deserved to be fired, I think, because she hadn't called in sick or something to that effect. Said it was her own fault. Right. Counsel for NBCO said the sister was involved in a discrimination claim. There was no claim, was there? Garcia was the one that had the discrimination problem. No. This is Gomez. Gomez had a workers' compensation claim. Gomez was a workers' compensation claim. At ER 251, did not counsel for NBCO say that Gomez's sister was involved in a discrimination claim? Gomez's sister. Yeah. In fact, there was no claim filed at all, was there? No. Your Honor, this was the error by NBCO's counsel that was corrected in the same sentence. Said the sister who was fired was involved in a discrimination claim or not. And opposing counsel then, Mr. Smith, obviously accepted that correction because Gomez did not say anything further. So there were four reasons offered as to Gomez, a workers' compensation claim that was pursued with counsel. And one was, for instance, that she filed a workers' compensation claim. Correct, Your Honor. And so had four of the white jurors. But they were not otherwise comparable because Gomez had four separate and independent reasons. Okay. But what's the relevance of the – were any of the white jurors asked whether they filed compensation claims? It wasn't asked specifically about compensation claims, Your Honor. There were general questions in the questionnaire about prior claims, prior involvement with discrimination. And the answers were, with four of them, yes, that they had filed compensation claims. Your Honor, but the cases all say that you need to compare apples to apples. They have to be otherwise similar. Gomez had a workers' comp claim, a sister who was terminated. She had volunteered very positive, effusively positive comments about working in a multilingual workplace. That was one of the issues involved in this case. You're making the same mistake in your argument that counsel for NBCO did in discussing this issue, and that is conflating her testimony about loving the workplace with the fact that it was multicultural. Her statement about loving the place came in response to having filed a workers' compensation claim in which she said, I was treated fairly, they treated me fairly, I loved working there, I would recommend the place for employment to anyone who asked me. Correct? Yes. Those are all true statements, Your Honor. But I believe the context of her comments about the multilingual workplace was that that was one of several positive aspects of the workplace. And I would submit it's not an unreasonable inference for a defense counsel in an employment case to think that a person who says those kinds of positive things about the multilingual workplace might have a positive view which could taint her view towards NBCO, which was moving from multilingual to a monolingual workplace. Let's talk about Adrian Lucatero. This is perspective juror number 14. Did Counsel for NBCO tell the Court that he lived with his recently laid-off father? Yes, Your Honor. Is there anything in the record to substantiate that? There was an inference from the record, Your Honor, that he was 19, that he was employed at a clerk at a local store, that he was very close to his parents. He was a kid. His questionnaire indicated he owned his own home. And the inference that NBCO's counsel What's the inference from that? That NBCO's counsel understood that he worked, that he lived with his parents. From what? From that he was a young guy who worked as a clerk in a local store and that he was very close to his father. 19-year-olds these days live with their girlfriends, their boyfriends. They live with all kinds of people. Your Honor, let me concede that factual perfection is the ideal here. The problem is that no Factual misrepresentation is not the ideal. Your Honor, what the courts really get at, though, is intentional lying, which would show pretext. Okay. Let's talk about this one. Did Counsel for NBCO say that the father's experience was something that bothered and concerned Lucatero? The answer is yes, isn't it? Well, yes. And what's the basis for that? That he was close to us, that he was concerned about the effect that the father's There's nothing in the record about that. Where in the record does it say Lucatero said that his father's experience bothered and concerned him? The fact that he was close to his father, that he thought he lived with his father. The words bothered and concerned do not appear, do they? No, Your Honor. He was not asked about that. No, Your Honor. Not even by NBCO. No, Your Honor. That's an inference that the counsel drew from that. That's the point. Your Honors, I'm sure would appreciate that the lawyers are standing there with Post-it notes, questionnaires. They're trying to put together the information as quickly as they possibly can. Both sides made mistakes. That's in the record. But the real point is the other side has the burden to call out mistakes, certainly if they're material. If any of these errors were viewed as material, they would have been called out. And that gives, in this case, the NBCO's counsel an opportunity to say, I'm sorry. What I meant to say was such and such, or let's look at the record. It gives the district court an opportunity to say, well, go get the questionnaire. The district court didn't have the questionnaire. The court could have said that. But by not raising these issues, there's no opportunity to correct these minor factual errors. An awful lot of minor factual errors with a lot of Hispanic jurors. There aren't any factual errors with white jurors, really. I don't know that the record supports that, Your Honor. I would respectfully disagree. These are – these were errors that were picked apart after the record was dissected for months and months on appeal. Not a single one was raised. And, you know, there's an explanation in between sort of innocent errors and deliberate falsehoods. And, you know, all we can read is the cold record. But an explanation kind of in the middle is that some of these things were, frankly, made up, not intentionally. The guy was trying to guess what – come up with a reason for a neutral reason to justify the strike. It just happens in this case that a number of them turn out to be inaccurate. And here's the problem for me. In a number of the instances, the district court accepted what Nibco's counsel said and stated, this is the case. Yes, there was a discrimination claim. Yes, it bothered him. Relying upon what Nibco's counsel said. Because the issue was not joined, Your Honor, by appellant's counsel. There was no objection. There was no rebuttal. I can't predict what the outcome would have been had there been a rebuttal. But there would have been discussion. There would have been a live discussion. It would have been a factual dispute that the district court could have resolved. And I submit that all of these cases in our brief, Boyd, Ballard, Yee, they all require appellant in this case to have rebutted, not even with evidence. Well, in this case, there wasn't evidence at all. They had used no evidence. They had used no argument. Well, let's just say with the sister. Mrs. Garcia said her sister had been terminated and it was her sister's fault. The judge was told that. Then with respect to Mr. Lucatero, Mr. Lucatero did say something about his father, but there was nothing in his answer that indicated any kind of problem, bias, prejudgment, or anything else. Do you agree with your opposing counsel that the district court did not get to step three of the Batson analysis? Your Honor, I completely disagree. I think the record, and it's 10 pages or so, 250 to 260, the district court here did exactly what district courts are instructed to do by the higher courts, by this court and by the Supreme Court. There were ample opportunities for the other side to make its record at step one. The court did not even require them to do that. The court accepted their demand for a review, for a request for race-neutral evaluations. The court properly let counsel for NIPCO outline the race-neutral evaluations and then, per the instructions, to go to step three, went to step three, and asked if there were any other comments from opposing counsel. I respectfully disagree with my opponent's response to the Court's question earlier that they contested. They did not. There was no evidence put into the record. Mr. Smith said nothing about Juro Garcia. As to Gomez, he ignored three of the four reasons, commented only on the sister just to add the qualifier that the sister's termination had been well-deserved. I don't think that even negates the reason. It's an additional fact. It doesn't show that it was wrong. So three of four Gomez reasons were uncontested. The Garcia reason was uncontested. And in Lucatero, not only was there no rebuttal, there was actually some tacit agreement. Mr. Ho said words to the effect that, oh, yes, there was something about the father, and then said only one other thing about Lucatero, and that was that Lucatero had said he could be a fair juror, which was really a mimic of the for cause standard, which was not the applicable standard. So like Your Honor, Judge Hawkins, you know, we lined up, you know, all of these responses as well. And as to all of the race-neutral evaluations in the record, there is no opposition. There's no request for a comparative analysis. There's no claim of disparate treatment. There's no claim of disparate questioning. Of all of the arguments, and they're very well done, hats off to my opponent, in the brief, the dozens and dozens of factual and legal arguments in nearly 100 pages of briefs, not a single one was made to the district court. So we're left to speculate, as the Court said in Bower, about what the district court would have done. That's just not the proper Batson process, Your Honor. Roberts, I just had a question for you. Your time ran out. Does your brief address the civil versus criminal matter with respect to whether a trial judge has an independent duty to examine at step 3? No, Your Honor. On one point, I may come actually quite close to agreeing with Mr. Ho, and that is that the cases don't seem to draw the distinction. However, the criminal cases that are relied on are almost all habeas cases, where this Court, understandably, is much more careful in reviewing what the courts below did. Here we have a federal district court of 18 years of experience, that's in the record, who understood Batson, who understood the process, who was in the best position to evaluate the demeanor and credibility of the striking attorney, and in fairness to the Court, heard nothing from the other side, and for all the district court knew, there was complete acquiescence in the race-neutral evaluations, and to hear this district court now excoriated by appellants for not doing more, when he wasn't asked to do anything, strikes me as being extremely unfair and utterly inconsistent with the teachings of Batson and his progeny. So do I hear you to say you agree with the proposing counsel that for the purpose of examining this issue that we've talked about today, that is the independent duty or not of a judge, it matters not whether it's a civil or criminal case? I don't believe that. I think that's correct, that there isn't a different legal standard. I think as a practical matter, and it's clear from reviewing the cases, that this Court takes the case of Batson. They happen to be criminal cases. They're criminal cases. They're habeas cases. And the Court goes out of its way to review the record, and it does not in the civil cases. In the civil cases, it holds the party in appellant's position to a much more exacting standard to meet the burden of persuasion, which is set down in this circuit's cases, Boyd, Bauer, Duncan v. Yee, and the recent Second Circuit case of Garraway citing Rudess in the Fifth Circuit case. And the gist of it is we invite sandbagging if we don't require the party in appellant's position to state their opposition, to make their objections at the time so that the striking party has an opportunity to address them, the district court has an opportunity to find who is correct and who isn't, and so this Court has a perfected record and a right record to decide. Thank you for the additional time. Your Honor, I would like to point out that Boyd, Bauer, and most of the other Ninth Circuit defendants, and I would like to reiterate Miller, L., which speaks very clearly and illustrates what the affirmative duty of the courts is in situations such as ours. As the Court is well aware, of course, Miller, L. conducted comparative jury analysis, went to the juror questionnaires for the first time on appeal, as did the Court in Snyder. Everybody could have done a better job at the sidebar. I fully acknowledge that. However, the Court's role is not to be a passive referee in these situations. Judge Hawkins, as you pointed out earlier, Batson and his progeny impose an affirmative duty upon the Court to safeguard against any potential for discrimination in the jury selection. And that's because the interests of the Court are... All I do is ask questions. I didn't take a position on anything. Okay. Thank you. I take that back, Your Honor. But the Court has its own affirmative duty based on its independent duty to safeguard jurors from being struck on account of their race and to protect the legal system from the taint of racial bias when it's present. And so for my opposing counsel to say, well, you know, the plaintiffs didn't say anything, they lose, misconstrues the nature of the Batson inquiry and the reasons that it's imposed by the courts. One of the problems that I can see to the district court is when they raise a matter involving the filing of a worker's compensation claim, is the court supposed to go back through the juror questionnaires without being invited to do so and say, well, here's one that did and here's one that didn't and here's another one, and kind of analyze it, and then they have another reason and go back through the questionnaire one more time? Well, Your Honor, the issue of time is one that I believe is addressed by the courts. And the Second Circuit case, by the way, is Jordan v. Lefebvre. It's a 2009 Second Circuit case, and I don't have the site with me right now. Having said that, I would point out that all these things are readily available to the district judge. The voir dire transcript was being transcribed in real time on a computerized monitor, and it would have been a very easy thing for the judge to go back and look at that or look at the questionnaires and say, well, is this really true? Again, I'm not advocating what happened as a model of how bats and objections should be made, but in the hurly-burly, as my opponent points out, of the pretrial proceedings, there were things that were neglected to do. We could have done a better job. But the point remains, I believe, that this court at this point still has the duty and the responsibility to address the racial bias that took place. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted. The court will stand in recess for the day. All rise.
judges: Siler, Reinhardt, Hawkins